UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UPSTATE NEW YORK CARPENTERS PENSION
HEALTH AND ANNUITY FUNDS, by Earl Hall
and Gary Toth, as Trustees; *et al.*,

                Plaintiffs,        5:05-CV-0849
                                          (NAM/GHL)

v.

SEAWAY OF GOUVERNEUR, INC.; and
WILLIAM REDDICK, individually,

                Defendants
_____

APPEARANCES:                                     OF COUNSEL:

ARCHER, BYINGTON, GLENNON & LEVINE, LLP    JOHN H. BYINGTON, III
  Counsel for Plaintiffs
425 Broadhollow Road, Suite 405
Melville, NY 11747

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiffs commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), alleging that Defendants failed to timely remit fringe benefit contributions and wage deductions to Plaintiffs for hours worked by three employees (Timothy Johnson, Andrew Barrett and Roy Smith) for the period of June 2002 through December 2002, pursuant to the applicable provisions of the parties' collective bargaining agreement, trust agreements, and collection policies. (Dkt. No. 1.) Liability on the part of Defendants has been declared based upon their default, and the matter has been referred to me by

Chief United States District Judge Norman A. Mordue for the issuance of a Report and Recommendation addressing Plaintiffs' entitlement to the relief sought in the Complaint, including, *inter alia*, delinquent fringe benefit contributions and deductions, interest, additional damages (including liquidated damages), attorneys' fees and costs. (Dkt. No. 12.)

## I. RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this action on July 8, 2005. (Dkt. No. 1.) Defendants never answered or appeared. By Memorandum-Decision and Order dated September 27, 2006, Chief Judge Mordue granted Plaintiffs' motion for default judgment, finding, *inter alia*, that they had adequately alleged that Defendants violated ERISA and the LMRA by failing to timely remit fringe benefit contributions and deductions to Plaintiffs for the period of June 2002 through December 2002. (Dkt. No. 12.) In their motion for default judgment, Plaintiffs had also sought an award of damages in the amount of the delinquent contributions and deductions, interest, an additional amount of damages (including liquidated damages),[1] and attorneys' fees and costs.

---

[1] Section 502(g)(2) of ERISA authorizes recovery of an additional amount of damages equal to the greater of (1) interest on the unpaid contributions to be determined by using the rate provided under the plan or (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs refer to this statutorily authorized additional amount of damages generally as "liquidated damages." Such a general description of this additional amount of damages appears to be common. *See, e.g., Perishable Food Industry Pension Fund v. Am. Banana Co., Inc.*, 01-CV-1922, 2003 21542316, at *5 (S.D.N.Y. July 1, 2003) (recognizing distinction between interest damages and liquidated damages under this section but casually referring to section as relating only to "liquidated damages"). However, I believe such a general description to be somewhat inaccurate based on a plain reading of 29 U.S.C. § 1132(g)(2)(C) and several well-reasoned decisions (which clearly distinguish between [1] damages equal to the interest on unpaid contributions and [2] "liquidated damages"). *See Jacobson v. Decora Elec. Co., Inc.*, 05-CV-4812, 2007 WL 2071563, at *5 (E.D.N.Y. June 5, 2007) (recognizing an award of additional damages under this section equal to interest on unpaid contributions, which is distinct from "liquidated damages"); *accord*, *Mason Tenders Dist. Council v. Aurash Const. Corp.*, 05-CV-1891, 2006 WL 647884, at *2 (S.D.N.Y.

(Dkt. No. 9.) In support of their request, Plaintiffs had submitted a number of documents introduced through an affidavit by their attorney who did not purport to have personal knowledge (except with regard to the issue of attorneys' fees and costs). (*Id.*) As a result, Chief Judge Mordue declined to enter an award of damages in the absence of evidence in admissible form substantiating Plaintiffs' claimed damages and referred the matter to me for a hearing on damages. (Dkt. No. 12.) On December 18, 2006, Plaintiffs filed their supplemental materials in support of their request for damages. (Dkt. No. 16.)

## II.   DEFAULT JUDGMENT GENERALLY

Rule 55(b) of the Federal Rules of Civil Procedure permits the entry of default judgment against a defendant who has failed to plead or otherwise defend in an action. Fed. R. Civ. P. 55(b); *see also Disney Enter., Inc. v. Merchant*, 05-CV-1489, 2007 WL 527921, at *1 (N.D.N.Y. Feb. 13, 2007) (Mordue, C.J.) (citing *Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 74 [N.D.N.Y. 1987]). In such an instance, the defaulting party's failure to defend constitutes an admission of all well-pleaded factual allegations set forth in the complaint, except as to those relating to damages. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Greyhound Exhibitgroup, Inc. v E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Here, Chief Judge Mordue has found, based upon Defendants' default, that Defendants' conduct stands in violation of ERISA, that Defendants are liable to Plaintiffs for some amount of damages (including delinquent fringe benefit contributions and deductions, interest, liquidated

---

March 15, 2006); *Mason Tenders Dist. Council v. Envirowaste and Transcontractors, Inc.*, 98-CV-4040, 1999 WL 370667, at *2 (S.D.N.Y. June 7, 1999). For this reason, in this Report-Recommendation, I refer to the amount of damages referenced by 29 U.S.C.§ 1132(g)(2)(C) as simply "an additional amount of damages."

damages, audit fees, and attorneys' fees), and that Plaintiffs are entitled to perform an audit of Defendants' books and records. (Dkt. No. 12.) In his decision, however, Chief Judge Mordue noted the Court's obligation to conduct an inquiry in order to ascertain the precise amount of damages owed by Defendants to a reasonable certainty, and the scope of the audit, citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). (Dkt. No. 12.)

In determining the proper amount of damages to be awarded upon a default judgment, it is not necessary for a court to conduct an evidentiary hearing, provided that it takes reasonable measures to insure the existence of a sufficient basis to conclude that the damages sought in the default judgment were suffered as a result of the defendant's conduct. *Fustok v. ContiCommidity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Int'l Bhd. of Elec. Workers Local No. 43 Pension, Annuity, Health and Welfare Funds v. Meacham Elec. Contractors, Inc.,* 05-CV-0754, 2006 WL 3096486, at *2 (N.D.N.Y. Oct. 27, 2006) (Mordue, C.J.). Accordingly, when affidavits are submitted based upon personal knowledge establishing an adequate basis for the damages sought, an evidentiary hearing is not required, and a court may base its default judgment on such evidence.[2] *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) [collecting cases].

---

[2]   The Second Circuit has recently noted the existence of an additional requirement, precluding a plaintiff (when requesting the entry of default judgment) from seeking relief that is not specified in its complaint. *See Silge v. Merz,* 510 F.3d 157, 159-61 (2d Cir. 2007). This additional requirement presents no impediment in this case, since Plaintiffs' Complaint specifically requests each of the elements of damages now sought. (*See*, *e.g.*, Dkt. No. 1, "Prayer for Relief.")

**III.     DISCUSSION**

In support of their motion for entry of judgment and an award of damages, Plaintiffs have submitted affidavits of the following three individuals: (1) Joseph W. McCarthy, the accountant who conducted an audit of Plaintiffs' records; (2) John H. Byington III, counsel to Plaintiffs; and (3) Jennifer A. Clark, Esq., former counsel to Plaintiffs. (Dkt. No. 16, Parts 1, 5; Dkt. No. 9, Part 2.) Each of these three affiants swears that they have personal knowledge of the facts set forth in, and the documentary evidence attached to, their respective affidavits. (*Id.*) Among these documents provided by Plaintiffs are the applicable provisions of the parties' collective bargaining agreement, trust agreements, and collection policies (hereinafter "Agreements"). (Dkt. No. 16, Part 3; Dkt. No. 9, Parts 4-6.)

Under these Agreements (and 29 U.S.C. § 1132[g][2]), if Defendants fail to remit the contributions and deductions required, they are liable for payment of the following **seven** forms of damages: **(1)** the unpaid and untimely paid benefit contributions and deductions owed to Plaintiffs for the hours worked by the three employees in question (Timothy Johnson, Andrew Barrett and Roy Smith); **(2)** interest on the unpaid and untimely paid contributions and deductions owed to Plaintiff Upstate New York Carpenters Pension, Health and Annuity Funds (hereinafter, the "Upstate Funds"), at the rate of twelve percent (12%) per year, compounded daily from the due date of the unpaid and untimely paid contributions; **(3)** an additional amount of damages owed to Plaintiff Upstate Funds equal to the greater of (a) interest on the unpaid and untimely paid contributions and deductions owed to the Plaintiff Upstate Funds at the rate of twelve percent (12%) per year or (b) liquidated damages equal to twenty percent (20%) of those unpaid and untimely paid contributions and deductions; **(4)** interest on the unpaid and untimely

paid contributions and deductions owed to Plaintiff Empire State Carpenters Apprenticeship Committee (hereinafter, the "Apprentice Fund"), at the rate of six percent (6%) per year; **(5)** an additional amount of damages owed to Plaintiff Apprentice Fund equal to the greater of (a) interest on the unpaid and untimely paid contributions and deductions owed to the Plaintiff Apprentice Fund at the rate of six percent (6%) per year or (b) liquidated damages equal to twenty percent (20%) of those unpaid and untimely paid contributions and deductions; **(6)** interest on the unpaid and untimely paid dues deductions and monies owed to Plaintiff Empire State Regional Council of the United Brotherhood of Carpenters and Joiners of America, Region 3, Carpenters Local No. 747 (hereinafter, the "United Brotherhood of Carpenters"), at a rate of nine percent (9%) per year; and **(7)** all attorneys' fees and costs incurred by Plaintiffs in collecting the aforementioned debt.  (Dkt. No. 16, Part 3; Dkt. No. 9, Parts 4-6.)

  Also among the documentary evidence provided by Plaintiffs are calculations of the damages (based upon an audit) at the foregoing rates of interest and liquidated damages.  (Dkt. No. 16, Parts 5-7; Dkt. No. 9, Part 6, at 19-21.)  The documentary evidence provided by Plaintiffs also supports, and details, the auditing fees and attorneys' fees and costs incurred by Plaintiffs in calculating and collecting the aforementioned debt.  (Dkt. No. 16, Parts 1, 4, 5; Dkt. No. 9, Parts 2, 7.)

  Based on this evidence, I recommend default judgment be entered in the total amount of damages requested by Defendants: (1) as against Defendant Reddick, $32,646.34, for unpaid contributions, deductions, interest and liquidated damages owed to Plaintiff Upstate Funds through December 18, 2006, together with the sum of $12.714 per day in interest, from December 19, 2006, through the date of entry of final judgment; and (2) as against Defendant

Seaway, the foregoing $32,646.34 amount and $12.714 per day in interest (owed jointly and severally with Defendant Reddick), together with an additional sum (owed only by Defendant Seaway to the other two Plaintiffs) of $2,010.52 for other damages through December 18, 2006, and $.38 (thirty-eight cents) per day in interest, from December 19, 2006, through the date of entry of final judgment.

In the interest of brevity, I will not break down each of these damages, which are detailed in Plaintiffs' affidavits and exhibits. I will only explain that the amount of $32,646.34 owed to Plaintiff Upstate Funds (which accounts for the bulk of the damages assessed) consists of the following: (1) damages owed to Plaintiff Upstate Funds for unpaid fringe benefit contributions and deductions for work by the three employees in question (Timothy Johnson, Andrew Barrett and Roy Smith) in the amount of $11,678.15, (2) interest owed to Plaintiff Upstate Funds in the amount of $7,658.60, calculated through December 18, 2006, (3) a statutorily authorized additional amount owed to Plaintiff Upstate Funds equal to $7,658.60 (referred to by Plaintiffs as "liquidated damages"), and (4) auditing fees and attorneys' fees and costs in the amount of $5,650.99.[3]

---

[3] I note that, applying the various hourly rates for legal services specified in their affidavits (and exhibits thereto) to the time expended, Plaintiffs seek recovery of the product of those figures, in the past often referred to as the "lodestar" amount, without seeking an upward or downward adjustment of that sum. In 2007, the Second Circuit abandoned its use of the term "lodestar," and broadened the case-specific variables to be considered by a district court in that Circuit when setting a reasonable hourly rate for attorneys' work. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 2008 WL 961313, at *1-2, 7 (2d Cir. Apr. 10, 2008). Applying the legal standard articulated in *Arbor Hill*, 2008 WL 961313, at *1, I find that, based on the evidence adduced by Plaintiffs, they seek recoveries employing hourly rates for legal services that appear to be reasonable, consonant with generally prevailing rates in this community for legal work of the type performed, and not in need of adjustment based on the relevant case-specific variables identified by the Second Circuit in *Arbor Hill*.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Clerk be directed to enter judgment in Plaintiffs' favor and against Defendants in the following amounts: (1) as against **Defendant Reddick**, **$32,646.34**, for unpaid contributions, deductions, interest and liquidated damages owed to Plaintiff Upstate Funds through December 18, 2006, together with the sum of **$12.714 per day** in interest, from December 19, 2006, through the date of entry of final judgment; and (2) as against **Defendant Seaway**, the foregoing **$32,646.34** amount and **$12.714 per day** in interest (owed jointly and severally with Defendant Reddick), together with an additional sum (owed only by Defendant Seaway to the other two Plaintiffs) of **$2,010.52** for other damages through December 18, 2006, and **$.38 (thirty eight cents) per day** in interest, from December 19, 2006, through the date of entry of final judgment.

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), Local Rule 72.1(c), and Fed. R. Civ. P. 6(a)(2), the parties have **TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS** (*see* Fed. R. Civ. P. 6[d]), from the date of this Report-Recommendation, within which to file objections to this Report-Recommendation. Such objections, if any, shall be filed with the Clerk of the Court. **FAILURE TO FILE TIMELY OBJECTIONS TO THIS REPORT-RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF ANY ORDER OF JUDGMENT THAT WILL BE ENTERED**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: April 23, 2008
       Syracuse, New York

*[signature]*
George H. Lowe
United States Magistrate Judge